UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GABRIEL CETINO,

       Petitioner,

  v.                                 Case No. 2:25-cv-1037-JES-DNF

DAVID HARDIN, et al.,

       Respondents,
_____/

## OPINION AND ORDER

Before the Court is Gabriel Cetino's Petition for a Writ of Habeas Corpus (Doc. #1). Cetino claims Immigration and Customs Enforcement (ICE) is violating the Immigration and Nationality Act (INA) and the Fifth Amendment's Due Process Clause by holding him in Glades County Detention Facility without a bond hearing. (Id.) The issues have been fully briefed. (Docs. #9 and #10). The Court grants the petition.

### I. Background

Cetino is a native and citizen of Guatemala who entered the United States on April 28, 2019, at the age of 14. The Department of Homeland Security (DHS) commenced removal proceedings that day by issuing a Notice to Appear. Cetino has a pending request for asylum and withholding of removal based on the murder of his mother in Guatemala, he has attended his immigration court hearings, and he has no criminal convictions. ICE arrested Cetino on August 18,

2025, and detained him at Glades Detention Center without a bond hearing.

## II. Discussion

The core of the dispute before this Court is whether 8 U.S.C. § 1225(b)(2) or § 1226(a) of the INA applies to Cetino. The distinction matters because § 1225(b)(2) mandates detention, while noncitizens detained under § 1226(a) are entitled to a bond hearing before an immigration judge.

### A. Subject-Matter Jurisdiction

Respondents argue that the INA divests the Court of jurisdiction over Cetino's petition. They first point to a provision of the INA that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). But this jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Reno

2

v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) (emphasis in original); see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves.").  "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  Canal A Media Holding, LLC v. United States Citizenship and Immigr. Servs., 964 F.3d 1250, 1258 (11th Cir. 2020).

Respondents cite two Eleventh Circuit cases to support their argument that § 1252(g) strips the Court of jurisdiction to consider Cetino's claims: Gupta v. McGahey, 709 F.3d 1062 (11th Cir. 2013) and Alvarez v. ICE, 818 F.3d 1194, 1203 (11th Cir. 2016).  In both cases, the plaintiffs filed Bivens[1] actions against ICE officials after their release from detention.  The Eleventh Circuit found that § 1252(g) barred both actions because they challenged the methods the defendants used to commence removal proceedings.

The factual and legal scenario presented in this case differs from Gupta and Alverez.  Cetino does not challenge the decision to commence removal proceedings against him, the decision to arrest

---

[1] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

3

and detain him, or the methods by which he was detained. Rather, Cetino challenges the Attorney General's treatment of him as an "alien seeking admission," whose detention is governed by § 1225(a)(2) rather than § 1226(a). Cf. Madu v. U.S. Atty. Gen., 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [§ 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.").

In short, Cetino asks the Court to answer a legal question—whether he is subject to mandatory detention under § 1225(b)(2) or discretionary detention under § 1226(a). He does not ask the Court to second-guess DHS's discretionary decision to commence removal proceedings against him. Thus, § 1252(g) does not bar this action. See Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *3-4 (S.D. Fla. Sept. 9, 2025) (finding Section 1252(g) inapplicable to an alien's challenge of immigration detention based on ICE's noncompliance with statutory requirements when revoking an order of supervised release).

Respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the

4

> United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). Specifically, they argue the action Cetino challenges—"ICE's decision to detain him in the first instance"—is an action taken to remove an alien. (Doc. #9 at 8).

This argument does not carry the day. Supreme Court and Eleventh Circuit precedent is clear. The zipper clause only applies to claims requesting review of a removal order. See Madu, 470 F.3d at 1365 (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation). Cetino is not asking for review of an order of removal; he is not challenging the decision to seek removal; and he is not challenging any part of the process by which his removability will be determined. Jennings, 583 U.S. at 294. The zipper clause does not apply.

**B. Exhaustion of Administrative Remedies**

Respondents next argue that the Court should dismiss this action as unexhausted since Cetino did not make an administrative request for a bond hearing. Cetino claims such a request would be futile due to a precedential decision by the Board of Immigration

5

Appeals (BIA). In Matter of Yajure Hurtado, the BIA held that immigration judges never have authority to consider bond requests from noncitizens who entered the United States without inspection because those aliens are always held under § 1225 and must be detained for the duration of their removal proceedings. 29 I&N Dec. 216, 220 (BIA. 2025).

Petitioners need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992); see also Shalala v. Ill. Counsel on Long Term Care, Inc., 529 U.S. 1, 13 (2000). The BIA has determined that noncitizens in Cetino's position are subject to mandatory detention and are not eligible for bond hearings. Thus, requiring Cetino to make an administrative request for a bond hearing would be futile because the result is predetermined. District courts around the country have reached the same conclusion. See Patel v. Hardin, No. 25-cv-870-JES-NPM, 2025 WL 3442706, at *3 n.5 (M.D. Fla. Dec. 1, 2025) (collecting cases). The Court finds good cause to excuse exhaustion.

**C. Legal Basis for Detention**

Cetino asserts that Respondents are detaining him in violation of the Fifth Amendment's Due Process Clause and the INA. The key question is whether Cetino's detention is governed by § 1225(b)(2), which mandates detention, or § 1226(a), which allows

6

for release on bond. Respondents argue that Cetino is an "alien seeking admission" under § 1225(b)(2) because he entered the United States without being admitted after inspection by an immigration officer. Cetino counters that he is not an "alien seeking admission" because he was apprehended inside the United States years after his entry, so § 1226(a) applies.

The Supreme Court recently analyzed the interplay between § 1225 and § 1226 in Jennings v. Rodriguez. There, the Court observed that the decision of who may enter this country and who may remain "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." Jennings, 583 U.S. at 287. As relevant here, the Court explained that § 1225 "applies primarily to aliens seeking entry into the United States." Id. at 297. By contrast, § 1226 "applies to aliens already present in the United States." Id. at 303. "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." Id. "Section 1226(a) also permits the Attorney General to release those aliens on bond[.]" Id.

The government followed this dichotomy "for the past three decades." Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025). That is, until July 8, 2025, when DHS announced a change:

7

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: <u>Interim Guidance Regarding Detention Authority for Applicants for Admission</u>, AILA Doc. No. 25071607 (July 8, 2025); <u>see also</u> <u>Merino v. Ripa</u>, No. 25-23845-CIV-MARTINEZ, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025) (discussing the memo). The BIA adopted and applied this new policy in <u>Yajure Hurtado</u>, <u>supra</u>.

Since DHS's change in policy, courts in this District and around the country have rejected its new interpretation of the INA. This Court recently joined the consensus and explained the flaws in Respondent's reasoning:

> First, the text of the statutes suggests that § 1225 does not apply to aliens who have been in the United States for long periods. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Id. The use of "arriving" indicates that the statute governs incoming noncitizens, not those present already. This is supported by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2). These limited and more specific methods of entry suggest that § 1225 applies to noncitizens

8

Case 2:25-cv-01037-JES-DNF    Document 12    Filed 12/12/25    Page 9 of 11 PageID 109

arriving at a border or port and are presently "seeking admission" into the United States.

Next, context and the Supreme Court's interpretation of these statutes point in the same direction. Courts are meant to "construe statutes, not isolated provisions." King v. Burwell, 576 U.S. 473, 486 (2015). As mentioned, the Supreme Court has identified § 1226 as the "default rule" applicable "to aliens already present in the United States." Jennings, 583 U.S. at 281, 288. "That Congress separated removal of arriving aliens from its more general section for 'Apprehension and detention of aliens,' § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." Pizarro Reyes, 2025 WL 2609425, at *5. The Supreme Court has also observed that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953)); see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Third, when considering amendment of the INA in 1996, Congress again acknowledged that noncitizens present in the United States have more substantial due process rights than new arrivals. See H.R. Rep. 104-469, p.1, at 163-66 (recognizing "that an alien present in the U.S. has a constitutional liberty interest to remain in the U.S., and that this liberty interest is most significant in the case of a lawful permanent resident alien"). Following the amendment, federal regulations explained, "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

9

> Finally, accepting Respondents' argument would leave § 1226 superfluous. Interpreting § 1225 to govern all noncitizens present in the country who had not been admitted leaves § 1226 with no apparent application. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Patel, 2025 WL 3442706, at *5.

It is undisputed that Cetino has been in this country since 2019. His detention is thus governed by § 1226(a). As a noncitizen detained under § 1226(a), Cetino has a right to a bond hearing. See Jennings, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Accordingly, it is hereby

**ORDERED**:

1. Gabriel Cetino's Petition for a Writ of Habeas Corpus (Doc. #1) is **GRANTED**.

2. Within **ten (10) days** of this Opinion and Order, Respondents shall either (1) bring Cetino before an immigration judge for an individualized bond hearing or (2) release Cetino under reasonable conditions of supervision. If Respondents release Cetino, they shall facilitate his transportation from the detention facility by notifying his counsel when and where he may be collected.

3. All other relief is **DENIED**.

10

4. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on December __12th__, 2025.

*John E. Steele*
_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE